ing institution; and the plaintiff discounted the draft, taking as collateral security the bill of lading for the goods.' The draft was neither accepted nor paid, whereupon the plaintiff made claim for the goods, but failed to obtain them, because Hartwig and Roberts, two of the defendants, had intercepted them on their arrival at New York, and caused them to be seized by the sheriff on attachments which they procured against Porter Bros. & Co., the consignors. The said defendants, by virtue of the attachments, and an order of the court permitting the sale of the goods as perishable property, caused the almonds to be sold by the sheriff; the two other defendants becoming indemnitors of the sheriff, and thereby making themselves liable for the wrong. Herring v. Hoppock, 15 N. Y. 409; Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261; Cow. Treat. §§ 566, 765; Van Dewater v. Gear, 21 App. Div. 201, 47 N. Y. Supp. 503. If, previous to the seizure, title to the property had passed to the plaintiff, the levy and sale under the attachments were wrongful. The delivery of the bill of lading to the plaintiff for the purpose of securing the payment of the draft drawn by the consignors upon the consignees, and which the plaintiff discounted, was sufficient to pass the title to the almonds to the plaintiff, subject to be devested only by the payment of the draft. Bank v. Daniels, 47 N. Y. 631; Bank v. Jones, 4 N. Y. 497; Gibson v. Stevens, 8 How. 384; First Nat. Bank of Syracuse v. New York Cent. & H. R. R. Co., 85 Hun, 160, 32 N. Y. Supp. 604; 4 Am. & Eng. Enc. Law (2d Ed.) 522, 545. The defendants' contention that they are not liable without proof of a personal direction to levy and sell is untenable. Ford v. Williams, 13 N. Y. 577. The giving of the bond of indemnity, and the other acts done, were for the benefit of the attaching creditors, who accepted the proceeds of sale, and approved of what had been done. Cow. Treat. §§ 566, 765; 2 Hil. Torts (2d Ed.) 312, 313. The sheriff's sale was well attended, and there was competition among dealers. The property brought thereat $1,560.43, a sum exceeding the amount of the draft, which was for $1,458.33; and this latter amount, as against the defendants, will be accepted as the fair market value of the goods. Gill v. McNamee, 42 N. Y. 45; Dixon v. Buck, 42 Barb. 70; Campbell v. Woodworth, 20 N. Y. 499; Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; Crounse v. Fitch, 1 Abb. Dec. 475. The plaintiff is entitled to judgment for the possession of the property claimed, assessing its value at $1,458.33, with interest. See Barnett v. Selling, 70 N. Y. 492, 494.

Judgment for plaintiff.

---

(26 App. Div. 603.)

McLEAN v. SANFORD et al.

(Supreme Court, Appellate Division, Second Department. March 29, 1898.)

1. MECHANIC'S LIEN—REPAIRS BY LESSEE—CONSENT OF LANDLORD.
    Where the owner of certain premises authorized his lessee to make "repairs and renovations" in his own discretion upon the leased premises, for which the owner was to allow him a stipulated amount, repairs made under this agreement subjected the premises to a claim for mechanic's lien under

Laws 1885, c. 342, as amended by Laws 1888, c. 316, authorizing a lien for repairs done with the consent of the owner.

2. SAME.

More than 90 days after settling his account with the owner's agent by accepting the agent's note for the amount of his claim, a lienor made a small repair without the owner's consent on the same premises, and not in continuation of the original work, and then filed a mechanic's lien for his entire services. *Held* that, 90 days having expired from the completion of the original repairs, and the last repair having been made without the owner's consent, the lien could not be established under Laws 1888, c. 316, requiring a lien to be filed within 90 days, the work to be done with the owner's consent.

Appeal from special term, Dutchess county.

Action by George H. McLean against Helen M. H. Sanford and others. Judgment for defendants, and plaintiff appeals. Affirmed.

The following is the opinion of Mr. Justice BARNARD:

William C. Hudson took a lease from the Stuyvesant heirs of their place in Hyde Park, known as "Edgewood," for the term of three years from the 1st of May, 1893. The tenant was to pay $1,100 a year, monthly in advance. A part of the premises was rented by the heirs to Mr. Mund for agricultural purposes at the rent of $325, payable June 1, 1893. The Mund lease began to run the 1st of April, 1893, and Hudson was to be entitled to the rent from Mund. By the Stuyvesant lease to Hudson the tenant was to do certain work at his own expense, but Hudson was empowered to do certain other work, termed "repairs and renovations," in his own discretion, and the owner was to allow him a sum not exceeding $500. This sum was to be taken from the Mund rent and the first two months of the Hudson lease. The plaintiff's assignor did plumbing work, and furnished material to the amount of $543.23. All this work was completed on the 3d of June, 1893. On the 1st of June, 1893, Hudson asked him for the bill in duplicate, so as to turn in one of the copies to the owners. On the 6th of June, 1893, the plumber took a note from Hudson at three months' time for the sum of $543.23. When the note matured, $100 was paid on it by Mr. Hudson, and the note renewed for another three months for the balance. Twenty dollars has been paid on this latter note, and the remainder is unpaid. When the first note was given, Mr. Hudson had in his hands $508.33, made up of the Mund rent and the May and June rent in advance under the lease to him. There can be no reasonable doubt that these repairs were done with the consent of the owner under chapter 342, Laws 1885, as amended by chapter 316, Laws 1888. Burkitt v. Harper, 79 N. Y. 273; Otis v. Dodd, 90 N. Y. 336; Cowen v. Paddock, 137 N. Y. 188, 33 N. E. 154. Mr. Hudson was not a contractor within the meaning of the lien act. He was rather the agent of the owner to make such repairs as he wished to make, but limited, as agent, by the owner, to the amount of $500. There was no privity of contract between the owner and the claimant, but such privity is not called for by the act under the written consent of the owner.

The remaining question is whether the lien was filed in time. The lienor had 90 days in which to file the lien from the 3d of June, 1893. On the 29th of September, 1893, Mr. Hudson requested the lienor to put the furnace in order for the winter. This was an old furnace, and needed a water glass, of the value of 25 cents, which, with the labor, amounted to $1.15. This need was not anticipated when the work was done in the spring, and was not in continuation of any work done upon the furnace then. Mr. Doherty, the lienor, knew of the $500 limitation, or ought to have known of it. Spruck v. McRoberts, 139 N. Y. 193, 34 N. E. 896. The limitation had been reached before the small charge was made almost four months thereafter, and after the preceding account had been adjusted and settled, and Hudson's note taken for it. There was, therefore, no continuous contract by which the prior account can for the purpose of filing a lien be deemed as continuous. Duffy v. Baker, 17 Abb. N. C. 357. For the reason, therefore, that as to the old bill the lien was not filed in time, and as to the September item it was not furnished under the consent of the owner, the complaint should be dismissed, with costs.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

A. M. & G. Card, for appellant.

Milton A. Fowler, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Mr. Justice BARNARD at special term.

---

EAGAN et al. v. SCULLY et al.

(Supreme Court, Appellate Division, Third Department. May 10, 1898.)

DEED BY MINOR—AFFIRMANCE—EVIDENCE.

A minor daughter deeded to her father property which he occupied as a homestead until he died, long after she reached her majority. Her father, with her knowledge and without objection, spent enough on the premises to keep them in good repair and in habitable condition, and during his lifetime she never asserted her ownership nor demanded any rent. About four months after her father's death, and within the period of limitations, she gave notice of disaffirmance of the conveyance, and brought action for her interest. *Held*, the facts are not sufficient to show affirmance of the deed, nor to bar her recovery.

Putnam, J., dissenting.

Appeal from trial term.

Action by Mary Eagan and others against Sarah M. Scully, as executor, etc., and others, in partition. Judgment for plaintiffs, and defendants appeal. Affirmed.

In May, 1867, Patrick Scully conveyed his house and lot to Mary Margaret and Catherine Scully, his daughters, for the express consideration of one dollar. Both such daughters were at that time infants. On November 9, 1880, the said daughters reconveyed said premises to their father for the express consideration of $625; and thereafter, on the 10th of May, 1881, Patrick Scully married the defendant Sarah M. Scully. Catherine Scully died in 1882. May 17, 1883, Mary Margaret Scully married the plaintiff William Eagan, to whom there were thereafter born the plaintiffs Mary Eagan and William Eagan, Jr. Mary Margaret died in 1887, leaving, her surviving, her husband, William Eagan, and her children, Mary and William Eagan, Jr., the plaintiffs in this action. Patrick Scully died July, 1894, leaving a last will and testament, wherein, after certain legacies, he devised and bequeathed all the rest and residue of his property to the defendant Sarah M. Scully, his widow. The plaintiffs on November 10, 1894, informed the defendant Sarah M. Scully that they disaffirmed the conveyance of November 9, 1880, to Patrick Scully, and thereafter commenced this action in partition, claiming that at the time of the conveyance of 1880 Mary Margaret Scully was an infant under the age of 21 years. Upon the trial the question of the infancy of Mary Margaret at the time of the conveyance to her father was sharply contested. The defendant also claimed a ratification by Mary Margaret Scully of the conveyance to her father after she reached her majority, and as evidence of such ratification proved upon the trial that she lived with her father until the time of her marriage, in 1883, and that thereafter, until her last sickness, she was almost a daily visitor at her father's house, and that subsequent to such conveyance her father from time to time expended money upon the house by way of repairs and alterations, such as repapering, repainting, laying new floors, building a front stoop along the entire frontage of the buildings, making new bedrooms, improving the yard in the rear of the premises, planting fruit trees, etc.,—all of which is alleged to have been done with the knowledge of Mary Margaret, and that no objections thereto were made by her; that she never received any rent of the premises. In short, it may be